UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHESTER PILAND,<br><br>              Plaintiff,<br><br>    v.<br><br>NATIONSTAR MORTGAGE, LLC,<br><br>              Defendant. | CASE NO. 2:12-CV-00444-MJP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendant's motion for summary judgment. (Dkt. No. 16.) Having reviewed the motion, the Defendant's response (Dkt. No. 17), Plaintiff's reply (Dkt. No. 20), and the remaining record, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment.

**Background**

Plaintiff purchased a home in Safford, Arizona, in 2007, secured by an 80/20 mortgage through AmTrust Bank. (Dkt. No. 17 at 2.) In an "80/20 program," 80% of the loan is a

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 1

1  conventional note and mortgage, and the remaining 20% of the loan is in the form of a home

2  equity line of credit. DEE PRIDGEN AND RICHARD M. ALDERMAN, CONSUMER CREDIT AND THE

3  LAW § 8:2 (Westlaw). Homeowners finance 80% of the purchase cost with a traditional

4  mortgage, and the remaining 20% is taken out as an equity loan. Id. The first (80%) mortgage

5  was transferred to Chase Home Finance, LLC ("Chase") in 2007, while AmTrust retained the

6  second (20%) mortgage. (Id.) Plaintiff defaulted in 2009, and Chase foreclosed on the house in

7  2010. (Id. at 3.) In December 2010, Defendant Nationstar became the new holder of the second

8  mortgage account. (Dkt. No. 18 at 2.)

9      Defendant made numerous attempts to collect on the account between December 2010

10  and March 2011. (Dkt. No. 18 at 2-5.) Plaintiff relies on Ariz. Rev. Stat. §§ 33-814(E)

11  (Arizona's "antideficiency" statute) to argue his liability for the second mortgage was

12  extinguished when the house was foreclosed in 2010. (Dkt. No. 17 at 5-6.) Plaintiff first disputed

13  the collection billing statement from Defendant on December 17, 2010, providing copies of the

14  Arizona statute with a cease and desist letter. (Dkt. No. 18 at 2.)  In a December 31, 2010, letter,

15  Defendant indicated it removed Plaintiff's account from its collection phone calls list, but did not

16  address the validity of the debt, nor cease collection efforts. (Dkt. No. 18 at 3.)

17      Defendant authorized G. Moss & Associates ("G. Moss"), a collection law firm, to

18  attempt collection, and G. Moss mailed its first letter on January 24, 2011. (Dkt. No. 18-1 at 11.)

19  Plaintiff sent the Arizona statute with a cease and desist letter to G. Moss on January 28, 2011.

20  (Id. at 12-13.) Plaintiff copied Defendant on the letter. (Id.) In response, G. Moss ceased its

21  collection efforts in January 2011. (Dkt. No. 18 at 3.)

22      On March 9, 2011, Defendant issued a letter that stated Plaintiff's "account will be

23  updated to reflect its appropriate status." (Dkt. No. 16 at 3.) Defendant requested that Plaintiff

24

ORDER GRANTING IN  PART AND DENYING
IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 2

1  "[p]lease allow time for the changes to take effect." (Dkt. No. 16-1 at 33.) However, Plaintiff
2  received another billing statement dated March 17, 2011. (Dkt. No. 18-1 at 16.) Also in March
3  2011, Plaintiff alleges Defendant obtained copies of Plaintiff's credit report. (Dkt. No. 17 at 5.)
4        Plaintiff filed this complaint on March 15, 2012. (Dkt. No. 1.) He claims violations of the
5  FDCPA, 15 U.S.C. § 1692 et seq.; RESPA, 12 U.S.C. § 2505 et seq.; and invasion of privacy.
6  (Id. at 1.) Plaintiff claims he suffered emotional damages, damage to reputation, and lost
7  opportunity to obtain credit due to Defendant's repeated attempts to collect the debt Plaintiff
8  argues is invalid under Arizona law. (Id. at 4-5.) Defendant argues: (1) the FDCPA is time barred
9  (Dkt. No. 16.); (2) its communications did not violate the FDCPA (Id.); (3) the mortgage was no
10 longer secured by a lien against the house, so it was not subject to the provisions of RESPA (Id.);
11 and (4) Plaintiff has not proven an invasion of privacy claim. (Id.)

**Discussion**

  A.   Legal Standard

The Court may grant summary judgment if the moving party demonstrates that there is no genuine dispute to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no material issue of fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

  B.   FDCPA Claim

Plaintiff's claim is not time barred. Under the FDCPA, a claim must be brought within one year of the alleged violation. 15 U.S.C.A. § 1692k(d). On March 17, 2011, Defendant sent a mortgage loan statement to the Plaintiff. (Dkt. No. 18-1 at 16.) Plaintiff filed his claim on March 15, 2012, less than one year later. (Dkt. No. 1). Plaintiff describes various ways in which the

1  Defendant violated the FDCPA. (Dkt. No. 17 at 8.) Plaintiff alleges behavior that "harass[ed],
2  oppress[ed], or abuse[d]" the Plaintiff, the use of "false, deceptive, or misleading
3  representation," and the use of "unfair or unconscionable means" in collection. (Id. at 8-9.)
4  Whether the March 17, 2011, statement involved any of the alleged behavior is an issue of
5  material fact.

6  Plaintiff does not owe the debt under Arizona's antideficiency statute. When a
7  homeowner's equity is extinguished by foreclosure, the holder of a second mortgage cannot
8  claim the balance owed under Arizona law. Nydam v. Crawford, 181 Ariz. 101, 103 (Ct. App.
9  1994). In its argument that the underlying debt is not extinguished, Defendant analogizes the
10 antideficiency law to a debt that is rendered uncollectable by the running of the statute of
11 limitations. (Dkt. No. 16 at 7-8.) However, this is contrary to the legislative purpose of the
12 antideficiency statute. See Baker v. Gardner, 160 Ariz. 98 (1988). Arizona lawmakers sought to
13 protect homeowners from "the financial disaster of losing their homes to foreclosure plus all
14 their other nonexempt property on execution of a judgment for the balance of the purchase
15 price." (Id. at 101.) The antideficiency statute is a protection designed to "abolish the personal
16 liability" of the homeowner regarding the second mortgage. (Id. at 104.)

17 A plaintiff may use events outside the statutes of limitations to establish a continuing
18 violation theory. Joseph v. J.J. Mac Intyre Companies, L.L.C., 281 F. Supp. 2d 1156, 1162 (N.D.
19 Cal. 2003). Similar to the development of some employment discrimination cases, a plaintiff
20 may present "relevant background evidence in a proceeding in which the status of a current
21 practice is at issue" to prove a continuing discriminatory violation. United Air Lines, Inc. v.
22 Evans, 431 U.S. 553, 558 (1977). While only one letter fell within the statute of limitations,
23 evidence of prior communications could be considered to establish a continuing violation.
24

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 4

Joseph, 281 F. Supp. 2d at 1162. This would include Defendant's March 9, 2011, acknowledgment of Plaintiff's challenge, which Plaintiff argues is evidence that Defendant knew the debt was invalid. (Dkt. No. 17 at 5.) The statute of limitations is "not intended to deprive plaintiffs of the use of evidence of violations that took place more than a year before filing." Joseph, 281 F. Supp. 2d at 1162. The Court must ascertain whether the March 17, 2011, is evidence of a "continuing pattern and course of conduct as opposed to unrelated discrete acts" when viewed in light most favorable to Plaintiff. Id. at 1161. The Joseph court noted that finding a continuing violation was "entirely consistent with the FDCPA's . . . broad remedial purpose of protecting consumers." Id. at 1162, citing Baker v. G.C. Services Corp., 677 F.2d 775, 777 (9th Cir. 1982).

The FDCPA claim is not time barred and summary judgment is DENIED.

C.  RESPA Claim

RESPA imposes a duty on mortgage servicers to respond to inquiries and disputes from account holders in a timely fashion. See 12 U.S.C.A. § 2605(e). It requires that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower . . . for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . ." 12 U.S.C.A. § 2605(e)(1)(A). Additionally, the servicer must take "action with respect to inquiry" within 60 days, which may include correcting the account or providing a written explanation of why the servicer believes the account is correct. 12 U.S.C.A. § 2605(e)(2). Plaintiff asserts he submitted two qualified written requests to Defendant, and he did not receive an appropriate response to either inquiry as required by the statute. (Dkt. No. 17 at 12.)

1    RESPA applies to "federally related mortgage loan[s]." 12 U.S.C.A. § 2602(a). Federally
2 related mortgage loans must be "secured by a first or subordinate lien on residential real
3 property." 12 U.S.C.A. § 2602(a); HUD Reg. X, 24 C.F.R. § 3500.21(a). The Plaintiff's initial
4 loan was an equity loan, which was secured by a subordinate lien on residential real property,
5 and therefore covered by RESPA, at least at the time of issuance. See 12 U.S.C.A. § 2602(a).
6 However, Defendant argues the loan is no longer secured by real property and should not be
7 defined as a federally related mortgage loan. (Dkt. No. 16 at 9.)

8    In certain cases, a loan may be regulated by RESPA even if it is no longer secured by real
9 property. Plaintiff argues the Department of Housing and Urban Development's Regulation X,
10 which interprets RESPA, shows intention to allow RESPA's protections after a mortgage is no
11 longer secured by real property in certain circumstances. (Dkt. No. 12.) Plaintiff points to
12 Regulation X's definition of "qualified written request" ("QWR") as a request within one year
13 after the date of transfer of servicing or "the date that the mortgage servicing loan amount was
14 paid in full." HUD Reg. X, C.F.R. § 3500.21(e)(2)(ii). When a mortgage is paid in full, it is no
15 longer secured by real property, but Regulation X is clear that RESPA still applies for up to one
16 year. Id. Likewise, mortgage loans that were dealt with in bankruptcy are subject to RESPA
17 disclosure requirements. See In re Monroy, 650 F.3d 1300 (9th Cir. 2011) (holding that RESPA
18 sets a minimum level of disclosures required of mortgage creditors to borrowers and bankruptcy
19 proceedings may create additional disclosure requirements). Additionally, RESPA's loan
20 servicing provisions should be liberally construed to preserve the statute's remedial purpose.
21 Medrano v. Flagstar Bank, FSB, 2012 WL 6183549 at *2 (9th Cir. Dec. 11, 2012). It is likely
22 that Congress intended for mortgage accounts like those of the Plaintiff to be governed by
23 RESPA even after foreclosure.

24

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 6

Damages are an element of a RESPA violation claim, and a plaintiff must plead and prove some damage as a result of the alleged violation. Solan v. Everhome Mortg. Co., 2011 WL 456013, at *3 (S.D.Cal. Feb. 3, 2011). Under RESPA, Plaintiffs must prove either statutory violations resulting from a "pattern and practice" of violation or actual damages. Garvey v. Am. Home Mortg. Servicing, Inc., 2009 WL 2782128 at *1 (D. Ariz. Aug. 31, 2009).

No "pattern and practice" of violations exists to allow statutory damages. Failure to respond to a single QWR does not provide evidence of a pattern or practice of RESPA violations. Garcia v. Wachovia Mortg. Corp., 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009). Plaintiff alleges only two QWRs submitted to Defendant: December 17, 2010, and January 24, 2011. (Dkt. Nos. 18 at 2, 18-1 at 11.) In both instances, Defendant replied but later sent collection attempts. (Id.) However, the response on March 9, 2011, shows that Defendant was likely in the process of remedying the issue, and the March 17, 2011, statement does not show a pattern of violations occurred.

Actual damages may include emotional distress. Moon v. GMAC Mortg. Corp., 2009 WL 3185596 at *15 (W.D. Wash. Oct. 2, 2009). While Plaintiff has not quantified his emotional distress, emotional distress should be evaluated by a trier of fact and not dismissed on summary judgment. (Id.) Therefore, summary judgment on the RESPA claim is DENIED.

D. Invasion of Privacy

Emotional distress damages may be awarded for an intentional tort. White River Estates v. Hiltbruner, 134 Wn.2d 761, 765 (1998). Plaintiff alleges the intentional tort of invasion of privacy. (Dkt. No.1 at 5.) Plaintiff did not raise a claim intentional infliction of emotional distress. (Dkt. No. 17 at 14 fn. 1.)

Courts have recognized claims for invasion of privacy for egregious debt collection practices. See Hilburn v. Encore Receivable Management, Inc., 2007 U.S. Dist. LEXIS 29833 (D.Or. 2007) (holding that debt collector invaded the privacy of the plaintiff after threatening arrest and repeatedly calling the plaintiff during a medical emergency that resulted in plaintiff's son's death); Joseph, 281 F. Supp. at 1158 (holding that 300 phone calls in 19 months invaded the plaintiff's privacy). In Washington, to prove invasion of privacy, a plaintiff must show that a defendant "intentionally intrude[d] . . . upon the solitude or seclusion" of the plaintiff or his private affairs in a manner that "would be highly offensive to a reasonable person." Mark v. Seattle Times, 96 Wn.2d 473, 497 (1981).

Defendant's conduct did not rise to this level. Plaintiff alleges Defendant intentionally escalated its collection efforts by retaining a collection law firm, pulling Plaintiff's credit report, and repeatedly sending payment demands despite Plaintiff's attempts to show the debt was invalid. (Dkt. No. 17 at 13.) Defendant did not threaten criminal charges. Hilburn, 2007 U.S. Dist. LEXIS 29833 at *3. Defendant responded to the initial cease and desist letter by removing Plaintiff from its phone call list. (Dkt. No. 16-1 at 20.) Plaintiff does not allege Defendant telephoned him after this date. Plaintiff states he was traumatized by the foreclosure of his home, and even after he lost his home and repeatedly disputed the account's validity, Defendant's conduct caused him great distress. (Dkt. No. 17 at 5.) Additionally, after Plaintiff sent a second communication, Defendant recognized the account, stated that it would note the account, and requested extra time. (Dkt. No. 16-1 at 33.) After this time, Plaintiff received a single automated statement from Defendant. (Dkt. No. 16-1 at 43.) This single action after agreeing to remedy the problem does not rise to an invasion of privacy. Defendant's motion for summary judgment for Plaintiff's claim of invasion of privacy is GRANTED.

## Conclusion

The Court DENIES summary judgment as to the FDCPA claim because it is not time barred. The Court DENIES summary judgment for the RESPA claim because Plaintiff's mortgage is covered by RESPA's protections. The Court GRANTS summary judgment for the invasion of privacy claim because Defendant's conduct does not rise to an invasion of Plaintiff's privacy.

…

The clerk is ordered to provide copies of this order to all counsel.

Dated this 15th day of February, 2013.

Marsha J. Pechman
Chief United States District Judge

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 9